UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ANTWAUN LEE JEFFERSON,

        Plaintiff,                    Case No. 2:13-cv-297

v.                                          Honorable R. Allan Edgar

TODD TOLLEFSON, et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I. <u>Factual allegations</u>

Plaintiff Antwaun Lee Jefferson, a state prisoner currently confined at the Baraga Maximum Correctional Facility (AMF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Assistant Resident Unit Supervisor Todd Tollefson, Acting Deputy Warden William Jondreau, Acting Deputy Warden Steven Niemi, Acting Warden Kenneth Trumbley, Deputy Warden Daniel Lesatz, Warden Thomas Mackie, Assistant Resident Unit Supervisor Gina Healey, Sergeant Terri Harscher, Classification Specialist Bradley Haynie, MDOC Director Daniel Heyns, Assistant Resident Unit Supervisor Ralph Sackett, and Lieutenant Unknown Koskinen.

In his complaint, Plaintiff alleges that on August 24, 2012, Plaintiff was transferred from a level I camp to segregation for a possession of dangerous contraband misconduct. Plaintiff was found guilty on September 7, 2012, and was given 30 days detention and loss of privileges. On October 1, 2012, Plaintiff was interviewed by AMF Security Classification Committee (SCC) members, who told Plaintiff that he did not fit the level V criteria. Plaintiff was told that he would be placed in general population until a bed became available at Plaintiff's proper security level. Plaintiff stated that he would rather stay in segregation, but he was ordered to go to the general population. On October 5, 2012, a security classification screen was generated showing that Plaintiff should be housed in a level IV facility and was approved by Defendants Jondreau and Haynie. On October 7, 2012, Plaintiff spoke with Defendant Tollefson and asked him about his transfer. Defendant Tollefson told Plaintiff that he had been placed on the transfer list and to be patient and wait for a bed to become available. Plaintiff alleges that other inmates were being transferred, so he did not believe Defendant Tollefson. Plaintiff filed a grievance regarding the issue.

On October 31, 2012, Defendants Tollefson and Niemi interviewed Plaintiff on his grievance. Plaintiff agreed to sign off on the grievance because he was told that he would be transferred to a level IV facility. On November 26, 2011, Plaintiff asked Defendant Tollefson why he had not been transferred and was told that because Plaintiff had been "waived" he could remain at AMF for up to a year. Plaintiff complained that he had been tricked into signing off on his grievance and Defendant Tollefson stated that if Plaintiff knew what was good for him, he would not write anymore grievances. Plaintiff filed a grievance on Defendant Tollefson, which was rejected as duplicative. Plaintiff appealed the rejection, but his step II appeal was rejected by Defendant Trumbley. Plaintiff wrote numerous kites to Defendant Trumbley attempted to be transferred, to no avail.

On December 17, 2012, Plaintiff called his family and told them that Defendant Tollefson was trying to set him up so that he could Plaintiff at level V. Plaintiff asked his family to call Lansing and the Michigan State Police to file a complaint against Plaintiff. Plaintiff alleges that he did not realize that Defendant Tollefson was listening to his phone calls. On December 28, 2012, Defendant Tollefson woke Plaintiff up and asked him for a urine sample. Plaintiff complied and the sample came back negative. A few minutes later, Defendant Tollefson told Plaintiff that he had to redo the sample, but this time in the shower. Plaintiff complied with the order. After Plaintiff returned to his cell, three Corrections Officers came to Plaintiff's cell and told him to get dressed and go to segregation.

Plaintiff remained in segregation from December 28, 2012, to January 4, 2013, without any documentation. On January 4, 2013, Plaintiff received a false misconduct for smuggling, which was written by Defendant Tollefson and reviewed by Defendant Koskinen. On

January 7, 2013, the Hearing Investigator interviewed Plaintiff. Plaintiff requested specific evidence for the hearing. On January 9, 2013, the Hearing Officer adjourned the hearing because the Hearing Investigator did not have the evidence Plaintiff had requested.

On January 14, 2013, Plaintiff received a copy of the phone calls referenced in his investigation and on January 16, 2013, the misconduct hearing resumed. Plaintiff asked if the phone calls could be played at the hearing, but he was told that they were considered confidential. Plaintiff was found guilty of attempting to introduce drugs into AMF. On February 4, 2013, Plaintiff spoke with Defendant Healey and explained that he was set up and was being illegally held at level V because he had written grievances. Defendant Healey told Plaintiff that if he was unhappy about the screening classification, he should write a grievance. When Plaintiff received the security classification screen by Defendant Healey, it indicated that Plaintiff was a level V prisoner by virtue of the August 24, 2012, possession of dangerous contraband misconduct and was reviewed by Defendant Jondreau and approved by Defendant Niemi.

On February 6, 2013, Plaintiff sent a kite to Defendant Jondreau, which went unanswered. On February 7, 2013, Plaintiff wrote another grievance regarding his classification, which was denied at each level. Plaintiff also wrote letters of complaint to the new warden, Mr. Mackie, and the new Deputy Warden, Mr. Lesatz, to no avail. On May 16, 2013, Plaintiff called his family regarding his situation and was told that they had attempted to call the MDOC Director, but he was still on vacation. Plaintiff told them to call Defendant Haynie and while he was talking to his mother, his sister called Defendant Haynie on her cell phone. During the phone call, corrections officers rushed to Plaintiff's cell and terminated his phone call by pulling the cord out of the wall. Plaintiff believes this was to prevent him from telling the Central Office about corruption at AMF.

On May 18, 2013, Plaintiff received a Notice of Intent to conduct an administrative hearing for a telephone restriction based on the destruction or misuse of property. On May 21, 2013, Plaintiff was found not guilty of a ticket for destruction or misuse of property written by Defendant Harscher. On June 5, 2013, Defendant Healey told Plaintiff that he would be released to the general population in the next week. Plaintiff stated that he was afraid to be in the general population because of all the "retaliatory conduct" by staff. On June 11, 2013, Plaintiff had an interview with the SCC and was told that he was being released to the general population. Plaintiff again stated that he feared being released to the general population because of all the "retaliatory conduct" by staff and asked to be transferred to another facility. Defendant Healey told Plaintiff that he would not be transferred and that if he refused to go to the general population, he would receive a misconduct for disobeying a direct order. Plaintiff refused to go and received a misconduct ticket.

On June 14, 2013, Corrections Officer Karppinen removed Plaintiff's television from his cell while he was in the shower. When Plaintiff inquired why, he was told that Defendant Healey had ordered it because of Plaintiff's refusal to go to the general population. On June 20, 2013, Plaintiff had another interview with the SCC and was told that he would be interviewed each week and if he continued to refuse to go to the general population, he would continue to received misconducts. Plaintiff agreed to go to the general population.

Plaintiff continued to attempt to be moved to a level IV facility by writing letters to Defendants Lesatz, Mackie, Sackett, Haynie, and Heyns, as well as to Peter J. Martel of the American Friends Service Committee. On July 11, 2013, Defendant Sackett told Plaintiff that he had reviewed his file and that he was correctly classified to level V. Plaintiff complained that his

classification screen had been altered, to no avail. On September 6, 2013, Plaintiff was forced to dispose of the portion of his property that was not allowed in level V.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some

other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Trumbley, Lesatz, Haynie, Mackie, Heyns, and Sackett were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Trumbley, Lesatz, Haynie, Mackie, Heyns, and Sackett had in this action involve the denial of administrative grievances or the failure to act. Defendants Trumbley, Lesatz, Haynie, Mackie, Heyns, and Sackett cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Trumbley, Lesatz, Haynie, Mackie, Heyns, and Sackett are properly dismissed for lack of personal involvement.

Plaintiff claims that the remaining Defendants retaliated against him for his use of the grievance system. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that Defendant Lesatz terminated his phone call in retaliation for his attempt to inform the Central Office of corruption at AMF. However, as noted above, Plaintiff failed to allege any facts indicating that Defendant Lesatz was personally involved in this action.

Plaintiff also claims that Defendants Tollefson, Niemi, Jondreau, and Healey retaliated against Plaintiff for his use of the grievance system when they wrote a fictitious misconduct report and altered his security classification screen in order to keep Plaintiff confined at a level V facility. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).

Plaintiff claims that Defendant Tollefson wrote a false, retaliatory misconduct ticket on him in response to his conduct in filing grievances. The court notes that a prisoner's claim that

he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). As noted above, Plaintiff was found guilty of the misconduct ticket written by Defendant Tollefson. Therefore, Plaintiff's claim against Defendant Tollefson regarding the allegedly false retaliatory misconduct ticket is properly dismissed.

In addition, Plaintiff claims that his security classification screen was improperly altered to indicate that Plaintiff was a level V prisoner by virtue of the August 24, 2012, possession of dangerous contraband misconduct. Plaintiff received this misconduct prior to his transfer AMF unsecure level 1 camp. Plaintiff does not claim that this misconduct was false or retaliatory. Plaintiff's only claim is that this must be incorrect because he was initially told that he was a level IV prisoner by virtue of the August 24, 2012, misconduct. However, the court notes that on January 16, 2013, Plaintiff was found guilty of attempting to introduce drugs into AMF. By the time that Plaintiff received the security classification screen by Defendant Healey on February 4, 2013, he had been found guilty of the second misconduct, which when taken into account with the first misconduct, could have increased Plaintiff's security classification screen.

In addition, Plaintiff fails to allege any facts showing that Defendants Healey, Jondreau and Niemi were motivated by a desire to retaliate against him. Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations

of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010). Because Plaintiff has failed to allege facts showing that the conduct of Defendants Healey, Jondreau and Niemi regarding his security classification screen was retaliatory, these claims are properly dismissed.

Plaintiff claims that Defendant Harscher retaliated against him by writing a misconduct ticket for destruction or misuse of property. Plaintiff was found not guilty of the misconduct. However, Plaintiff fails to allege any facts showing that Defendant Harscher was motivated by a desire to retaliate against him. Therefore, this claim is properly dismissed.

Finally, Plaintiff claims that Defendant Koskinen violated his due process rights by covering up the failure to conduct Plaintiff's misconduct hearing within the required time limits, which resulted in Plaintiff being confined to segregation for 175 days. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an

"atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 810, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Although plaintiff states that his placement in segregation has been "atypical and significant," he merely uses the legal jargon and presents no factual allegations to support his conclusion. The only allegation he presents regarding his segregation is that its duration has been for more than one year. The length of the placement is not determinative. *See Jones*, 155 F.3d at 812. Plaintiff has failed to make any allegations which that his segregation is "atypical and significant." In fact, in his complaint Plaintiff alleges that he was subjected to misconduct tickets for refusing to leave segregation and go to the general population. Consequently, the court concludes that no liberty interest is implicated by his placement.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: 3/24/2014                  */s/ R. Allan Edgar*
                                  R. Allan Edgar
                                  United States District Judge